**Betty Jane PALMER et al., Plaintiffs,**

v.

**GENERAL MILLS et al., Defendants.**

**Civ. No. 71–141.**

United States District Court,
N. D. Ohio, W. D.

April 30, 1974.

Harland M. Britz, Toledo, Ohio, for plaintiffs.

Judith A. Lonnquist, Jacobs, Gore, Burns & Sugarman, Chicago, Ill., and John G. Mattimoe, Toledo, Ohio, for defendants.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

DON J. YOUNG, District Judge.

This action was originally commenced on May 11, 1971, by the plaintiffs Betty Jane Palmer, Valerie Hitts, and Miriam Dickey as a class action against the defendants General Mills, Inc. and Local 58, American Federation of Grain Millers. The complaint alleges discrimination on the basis of sex in employment of women in the plant of the defendant General Mills in Toledo, Ohio.

The class of plaintiffs was described in the complaint as being composed of female persons who are or might be employed by the defendant company at its Toledo facility, and who are or might become members of the defendant union, who have been, continue to be, or might be adversely affected by the practices complained of in the action. The Court ultimately determined that the actual membership in the alleged class would not exceed one hundred to one hundred fifty persons, and that it was not impractical to join the members of the alleged class as parties. It was therefore ordered that opportunity be given those persons affected to join in the action, and that it be discontinued as a class action. Somewhat over thirty additional parties thereafter entered their appearance as plaintiffs in the case.

The filing of the complaint was preceded by a long and tortuous action before the Equal Employment Opportunity Commission. On August 26, 1966, the three original named plaintiffs filed charges before the EEOC. The so-called "right to sue" letter to the plaintiffs was dated May 4, 1971, almost five years later. It appeared that in October, 1970, the EEOC and the defendants reached a proposed conciliation agreement which required some changes of the collective bargaining contract between the defendants. The proposed changes in the bargaining contract were accepted by the defendants, and drafts of the agreement with the EEOC were

exchanged for minor corrections in wordage. However, in February, 1971, the EEOC rejected the October 1970 agreement and proposed a totally new agreement which was rejected by the defendants. The defendants on March 22, 1971 entered into an agreement modifying their collective bargaining contract to conform to the provisions of the proposed October, 1970, conciliation agreement. Thereafter, as stated above, the EEOC issued the right to sue letter to the three named plaintiffs and this action was commenced.

After some activity by way of discovery and motions for summary judgment, the matter finally came on for trial. The trial commenced on April 1, 1974 and continued for two and a half days.

The evidence showed that the defendant company originally commenced its operations in Toledo in the early nineteen-fifties, and the first collective bargaining agreement with the defendant union was entered into not long thereafter. Apparently employment conditions have been good, as most of the employees have seniority going back to the early years of the operation.

The evidence showed that the plant operations were divided into four departments. Because of the Ohio protective statutes for female employees, it was impractical for women to work in any but the packing department. Even in that department, it was necessary to have separate classifications for male and female employees because of the conflict between the weight-lifting and hours of service requirements of the statutes and the necessities of the defendant company's operations.

Each of the four departments of the defendant company's operations have established lines of progression for employees therein. These are detailed in the collective bargaining agreements. Progression is governed by departmental seniority, although layoffs are governed by plant seniority. In the packing department, a more stringent physical examination was required for workers in Packing I, the male line of progression, than for Packing II, the female line. The more stringent physical examination was required for employees in all other departments. The evidence failed to support the plaintiffs' contention that these physical examinations were not actually required of male employees.

The original complaint by the three named plaintiffs to the EEOC resulted from the refusal of their bids for jobs in Packing I on the ground that the statutes forbade their employment in that line. The grievance procedures of the defendant union were resorted to, unsuccessfully, for the same reason. The evidence shows that the grievance procedures of the defendant union are somewhat unusual, in that if the grievant is not successful in the first or second steps of the grievance procedures, he may bring the matter before the membership at a regular meeting, for action requiring the grievance to be taken to arbitration. The evidence shows that because of the belief that the EEOC would not consider the plaintiffs' complaint while any remaining steps of the grievance procedure were available, plaintiffs did not take the grievance to the membership, thus terminating the grievance procedure.

The evidence was conclusive that after the modification of the collective bargaining agreement in March, 1971, prior to the commencement of this action, female employees were permitted to bid for jobs in any of the other departments without let or hindrance; that ultimately the requirement was abandoned for a comprehensive physical examination for any job except Packing II, the former female classification, but that until it was, it was uniformly required of all employees, and that of twenty-nine women who applied for and took it, twenty-eight passed. This clearly demonstrated that the requirement for a physical examination had no actual discriminatory effects whatsoever.

The evidence also showed beyond any doubt that within the limitations imposed by the protective statutes, the de-

fendant union was assiduous and successful in protecting the interests of the women employees, insisting that they be given preference in the assignment of certain types of work which they could do under the statute, and from time to time gaining them other advantages in salary increases and shift assignments over men employees.

The contention of the plaintiff in essence is that this case is distinguishable from Manning v. General Motors, No. C 69–334 (N.D.Ohio filed August 10, 1971), aff'd 466 F.2d 812 (6th Cir. 1973), cert. denied, 410 U.S. 946, 93 S. Ct. 1366, 35 L.Ed.2d 613 (1973) (which also involved the question of good faith compliance with the state protective statutes) because the system of departmental seniority perpetuated the effects of the previous discrimination. Plaintiffs contended that they could not use their plant seniority to advance in the lines of progression in the other departments, but when once those lines were opened to them, in March, 1971, they had to enter them at the beginning steps, and could only progress as they acquired departmental seniority.

■ The evidence, however, totally failed to sustain this position. It is clear beyond the peradventure of a doubt that persons who entered other lines of progression even after the commencement of this action had been able to reach the top positions in the lines they entered. No great amount of department seniority was required. It was also clear that those of the plaintiffs who offered testimony had not attained the top salaried positions even in the Packing II line because they limited their working hours to the day shift, and would not work on weekends.

Because of the fact, previously mentioned, that few employees ever leave their jobs with the defendant, to get the top jobs on the day shift requires seniority that the plaintiffs do not have even in the line of progression where their plant and departmental seniority

are congruent. Thus the claim that the seniority system operates to preserve the effects of past discrimination is beyond any doubt totally unsupported by the evidence.

There was no evidence that any of the plaintiffs would have been in any better situation than they presently are in if there had never been any classification of jobs on the basis of sex in the defendant company's plant. Neither was there any evidence that women members carried less weight or were given less consideration by the defendant union than men members. On the contrary, the evidence clearly showed that the defendant union's procedures were unusually democratic, and that it used its collective bargaining powers to the maximum to offset as much as possible the discriminatory effects of the Ohio statutes.

The evidence shows that the defendants decided to defy the Ohio protective statutes a few days before the decision that the statutes were invalid in Ridinger v. General Motors Corp., 325 F. Supp. 1089 (S.D.Ohio 1971). This was some months before the decision of this Court in Manning v. General Motors Corp., supra, and almost a year before the Supreme Court of Ohio determined the issue in Jones Metal Products v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1, which was decided March 15, 1972. The affirmance of the Manning case by the Sixth Circuit Court of Appeals did not occur until September, 1972, almost a year and a half after the defendants took action to eliminate the discriminatory effect of the Ohio statutes by defying them.

■ Granted that the federal law is no less violated because compliance with it would violate state law, when the command of the federal law is less than crystal clear and unequivocal the person caught between the demands of the two statutes ought not in equity to be mulcted in damages until the courts have resolved the conflict.

It ought to be understood also that any system of seniority is designed to be discriminatory, but because seniority is an easily applied and totally objective method of classification, it will continue to be used in spite of its having some inherently evil side effects. When not even the legislative branch of the government can function without reliance upon a seniority system, it is idle to pretend that industrial seniority systems can be brushed aside whenever someone lacking seniority feels that his rights are being impinged upon, or his merits are unrecognized or unrewarded.

The Civil Rights Act of 1964 has brought forth a spate of lawsuits involving allegations of discrimination because of sex. Some of them have been meritorious, involving situations in which it was clear that stereotyped notions of sex differences were used to gain financial advantages for employers, male employees, or both. But it is not automatically and axiomatically true that just because a particular plant employs both men and women the latter are discriminated against. Nor can it be expected that when laws are changed to eliminate past injustices there will be no residual effects of the past, or that all the adjustments required by the change in law can take place instantaneously.

Before there can be a recovery of damages for violation of the Civil Rights Act of 1964 by sex discrimination in employment, more must be shown than that the defendant employed both men and women, and that, until they were voided, it complied with state statutes designed many years ago to grant to women protections consistent with social customs of bygone days. Essentially, the evidence offered in this case shows no more than that. The plaintiffs are entitled to no relief at the hands of this Court.

This opinion will serve as the Court's findings of fact and conclusions of law. Defendants shall prepare and submit an order in accordance therewith.