Betty Jane PALMER, Plaintiff,

Valerie Hitts and Miriam Dickey,
Plaintiffs-Appellants,

v.

GENERAL MILLS INC., and Local 58,
American Federation of Grain
Millers, Defendants-Appellees.

No. 74–2032.

United States Court of Appeals,
Sixth Circuit.

April 4, 1975.

Harland M. Britz, Britz & Zemmelman, Toledo, Ohio, for plaintiffs-appellants.

Stephen E. Crable, Judith A. Lonnquist, Jacobs, Gore, Burns & Sugarman, Chicago, Ill., John G. Mattimoe, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and MILLER and LIVELY, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

In May of 1971, following the receipt of a right to sue letter from the Equal Employment Opportunity Commission, three female employees filed suit against General Mills, Inc. and Local 58 of the American Federation of Grain Millers. The plaintiffs alleged that the defendants had engaged in various discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. Secs. 2000e et seq. Initially the suit was brought as a class action, but the district judge determined that it was not impractical for interested persons to be joined as parties. Subsequently thirty-one additional plaintiffs were added to the litigation. The trial was held before the district judge sitting without a jury. At the close of all the proof, the court found that the plaintiffs had failed to show that they were entitled to any relief under Title VII. The plaintiffs have appealed the decision to this Court.

Since the early 1950's the defendant General Mills, Inc. has operated a food processing plant in Toledo, Ohio, and since that time the defendant union has represented the employees in the production and maintenance unit of the company. The Toledo plant is divided into four departments: processing, packing, material handling and maintenance. Although women comprise approximately 25% of the labor force, until recently they could work only in the packing department. This was necessitated by the restrictions imposed upon working women by the Ohio female protective statutes.[1] In an effort to comply with these various limitations, the company employed women in an exclusively female division of the packing department.[2]

---

1. Ohio Revised Code Secs. 4107.40–4107.53. The provisions pertinent to the female employees of General Mills were limitations on the number of hours worked per day and per week and on the frequent lifting of weights in excess of *twenty-five pounds.*

2. Even in the packing department women were not legally capable of performing all the tasks. As a result, the work was divided into separate male and female lines of progression according to the demands of the job.

The underlying controversy arose in 1966 when the three individual plaintiffs sought to fill a vacancy in the male line of progression in the packing department. Their applications were denied on the grounds that such a work assignment would violate the weight and overtime provisions of the state protective laws. When the union grievance procedure failed to produce a different result, the plaintiffs filed their charges with the EEOC. Protracted negotiations ensued between the Commission, the company and the union, and a tentative conciliation agreement was arrived at for the purpose of eliminating all unlawful discrimination at the plant. Later the EEOC withdrew its approval of the agreement. Nevertheless, the company and the union put the plan into effect on March 22, 1971. The thrust of the agreement was that the company would open up all of its departments to qualified women employees and thus would ignore the restrictions placed on female workers by the Ohio law. The parties agree that since the implementation of the plan on March 22, 1971, there has been no discrimination on the basis of sex at the General Mills plant. In the present action, however, the plaintiffs contend that the current seniority system is a barrier to their advancement in any newly opened departments, and therefore, that it perpetuates the effects of past discrimination. The district court did not accept this contention and instead found that had the plaintiffs taken advantage of their opportunities to transfer and progress, they would have been able to make significant advancements in any of the departments.

■ As this Court has recognized, there was considerable uncertainty about the possible conflicts between state protective legislation and the provisions of Title VII. *See* Manning v. International Union, 466 F.2d 812, 815 (6th Cir. 1972), cert. denied, 410 U.S. 946, 93 S.Ct. 1366,

35 L.Ed.2d 613 (1973). The EEOC did little to clarify the situation. Initially, the Commission stated that an employer would not violate Title VII by his good faith compliance with state protective statutes. Soon thereafter the EEOC decided to leave to the courts the resolution of any conflicts. Finally, in 1969, the Commission declared that an employer's adherence to certain state restrictions would not constitute a valid defense to an otherwise unlawful practice under Title VII. Kober v. Westinghouse Elec. Corp., 325 F.Supp. 467 (W.D.Pa. 1971), aff'd, 480 F.2d 240 (3d Cir. 1973); *see* Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971). Even though the validity of the Ohio laws had not been ruled upon by either the Commission or the courts, General Mills and Local 58 agreed no longer to abide by the state statutes.[3] Nevertheless, it is established that an employer's compliance, even in good faith, with the requirements of a state law later declared invalid does not render the company's actions any less a violation of Title VII of the 1964 Civil Rights Act. Ash v. Hobart Mfg. Co., 483 F.2d 289, 292 (6th Cir. 1973). The plaintiffs argue that the current seniority system perpetuates the effects of the past discrimination.

■ This Court has held that Title VII reaches the "continuation of effects of past discrimination resulting from present practices (neutral on their face) which have the practical effect of continuing past injustices." United States v. Int'l Bhd. of Elec. Workers, Local 38, 428 F.2d 144, 149 (6th Cir.), cert. denied, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 48 (1970); Bailey v. American Tobacco Co., 462 F.2d 160 (6th Cir. 1972); *see* Griggs v. Duke Power Co., 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Although this principle was developed in the context of cases involving employment discrimination on the basis of race,

---

**3.** Not long afterwards the protective sections were struck down by both a federal district court and the state supreme court on the ground that the provisions had been superseded by Title VII. *See* Ridinger v. General Mo-

tors Corp., 325 F.Supp. 1089 (S.D. Ohio 1971), rev'd on other grounds and remanded, 474 F.2d 949 (6th Cir. 1972); Jones Metal Products Co. v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1 (1972).

we discern no reason why it should not apply with equal force to instances of sex discrimination. *See* Meadows v. Ford Motor Co., 510 F.2d 939 (6th Cir. 1974).

On its face, the seniority system in operation at the General Mills plant is a sex neutral one. At the Toledo facility, two types of seniority are provided for under the contract: plant seniority and department seniority. Plant seniority is accumulated from the dáte an employee is hired by the company, and it is used for virtually every purpose except department promotion. It is the standard that governs the transfer from one department to another; determines layoffs and recalls; and entitles employees to vacations, retirement and severance pay. Department seniority, on the other hand, accrues from the moment an employee begins work within one of the four branches of the plant. Advancement up the line of progression within a particular department is determined on the basis of an employee's length of service in that department. When an employee transfers from one department to another, she loses her acquired seniority and must begin to accumulate seniority within the new department for promotion purposes. Because the plaintiffs in this case could work only in the packing department, their plant and department seniority coincided. The first opportunity for any of these women to transfer was after the implementation of the March 22, 1971 agreement, and as a result, their seniority in any new department could run only from some time after that date.

The district court denied relief because it found that the plaintiffs had not even sought to reach the top of the packing department; that they had not taken advantage of the opportunities to transfer into other departments; and that had they transferred after the agreement, they would have made substantial progress in the other departments. While we do not question the correctness of the above findings, we disagree with the lower court's legal conclusion that the department seniority system has not perpetuated past discrimination. It is clear that any women considering a transfer pursuant to the agreement would always be at a disadvantage when competing for promotion with men who possessed greater seniority because they were free to enter the same department at any time prior to March, 1971. The thrust of Title VII is not punitive but remedial. As the Supreme Court noted in *Griggs*, the Act is directed at the consequences of employment practices. 401 U.S. at 432, 91 S.Ct. 849. A business procedure that operates in a discriminatory manner violates Title VII regardless of a defendant's good intent or motivation. *Ibid.* In the present case, the department seniority system was designed to permit nondiscriminatory advancement, but under the circumstances it operates to preserve the vestiges of past discrimination. *See* Sims v. Sheet Metal Workers Int'l Ass'n., Local 65, 489 F.2d 1023, 1026 (6th Cir. 1973).

That the plaintiffs have not sought promotions and transfers and that they could have made considerable progress had they done so, are not facts relevant to the present inquiry. At best, such findings indicate only that the plaintiffs have certain employment opportunities available to them at the plant. ·Yet for Title VII purposes the crucial question is whether the women have *equal* opportunities available to them. In a company where promotion is granted according to the amount of seniority acquired in an individual department, it is readily apparent that the women employees will always suffer from the disadvantage of the 1971 entry date. Although they will advance even after that date, they still cannot compete equally with male employees who were able to transfer without the restrictions of state law.

As we have recognized, an employer can maintain a seniority structure that is discriminatory in effect provided he can justify it as a business necessity. Head v. Timken Roller Bearing Co., 486 F.2d 870, 879 (6th Cir. 1973). Although the test adopted in the *Head* case per-

tains to racial discrimination, it is applicable to cover employment discrimination on the basis of sex. "The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business." *Id.* at 879. The specific elements of the standard are as follows: the business purpose must be sufficiently compelling to override any discriminatory impact; the practice must effectively carry out the business purpose it is alleged to serve; and there must be available no alternative policies or practices which would better accomplish the business purpose or accomplish it equally well but with a lesser discriminatory impact. *Ibid.*

Because the district court concluded that the department seniority system did not perpetuate past discrimination, it did not make any findings regarding the existence of a business necessity. The record, however, does contain evidence concerning the company's purpose for using such a procedure. Basically the company claimed that the experience acquired on one job with a department would be helpful to the employee who was promoted to the next higher position in the same line of progression, but it acknowledged that a worker with average intelligence could be trained for most jobs from within a few days to several weeks. It is not enough that the evidence established that there was some reason for using the system; it must also show that the purpose was sufficiently compelling to override its discriminatory impact. On the basis of the record, we find that the seniority system provided helpful but not absolutely essential training and experience for employees in the line of progression. Even though as to the second element, we cannot say that the system does not effectively carry out the alleged business purpose, we consider this conclusion to be of comparatively little significance in this case. In situations involving a practice neutral on its face, it is unlikely that the practice would be used for any reason other than to effectuate a genuine business purpose. This is to be distinguished from the implementation of a practice so arbitrary that its only real purpose must be regarded as one to discriminate. As for the final element concerning available alternatives, it does not appear that any proof was offered on this point at trial.

 Despite this omission, we believe that the company has failed to justify the seniority system to the extent necessary to preclude the granting of relief to the plaintiffs. As we apply the test of *Head, supra,* the essential finding is that the seniority practice is not of compelling importance to the company's business. On the other hand, the second factor is not pertinent to the analysis because the challenge is directed at a facially neutral policy. Finally, even though the availability of alternatives was not covered at trial, we do not think that the failure affects our conclusion that the department seniority system unjustifiably perpetuated past discrimination. The possible existence of alternative means for promotion has more bearing on the fashioning of a remedy than it does on the fixing of liability. It is thus a factor to be taken into account when considering whether the situation requires the dismantling of the system or merely the altering of its operation. On remand, the district court shall have the discretion to devise appropriate relief as provided for in Title VII. 42 U.S.C. Sec. 2000e–5(g); *see Ash,* 483 F.2d at 292. Therefore, we reverse the judgment of the district court and remand the action to that court for the formulation of an adequate remedy.

Reversed and remanded.