Betty Jane PALMER, Plaintiff,

Valerie Hitts and Miriam Dickey, Plaintiffs-Appellants,

v.

GENERAL MILLS INC., and Local 58, American Federation of Grain Millers, Defendants-Appellees.

No. 77–3111.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1978.

Decided July 2, 1979.

Harland M. Britz, Britz & Zemmelman, Toledo, Ohio, for plaintiffs-appellants.

John G. Mattimoe (General Mills), Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, Robert S. Sugarman (Local 58), Linda R. Hirshman, Chicago, Ill., for defendants-appellees.

Before LIVELY and ENGEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

ENGEL, Circuit Judge.

This sex discrimination dispute had its genesis in 1966 when three female plaintiffs, employees in the packing department of General Mills' Toledo plant, sought to fill a vacancy in the male line of progression in that department but were refused by the company because of restrictions imposed upon working women by Ohio's female protective statutes. Ohio Rev.Code Ann. §§ 4107.40–4107.53 (Baldwin 1977).[1] The present suit was commenced in May, 1971 after the plaintiffs had received a right to sue letter from the Equal Employment Opportunity Commission, the complaint alleging that the defendant company and union had engaged in various discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e et seq. (1976).

After the class action aspects had been dismissed and 31 additional female plaintiffs were added to the litigation, the matter came on for trial before United States District Judge Don J. Young, sitting without a jury. At the close of proofs, Judge Young found that plaintiffs had failed to show that they were entitled to any relief under Title VII, basing his findings principally on the fact that the company was entitled to rely upon the restrictions of Ohio's protective laws, at least where the command of federal law was less than clear and unequivocal, and therefore it ought not to be "mulcted in damages until the courts have resolved the conflict." Palmer v. General Mills, 375 F.Supp. 817, 820 (N.D.Ohio 1974). Judge Young further held that upon the facts before him, the seniority system then in effect at the General Mills plant in Toledo did not preserve the effects of past discrimination. In this respect he basically relied upon two separate findings. First, he held that since March, 1971, all bars to the right of females to bid on other jobs within their own or other departments had been removed "without let or hindrance" and that, therefore, the seniority system, which was never discriminatory on its face, was no longer discriminatory in fact. Second, he held upon the evidence that the female plaintiffs had not made any serious effort to bid on jobs other than those which they held, even in the several years which had intervened since the opportunity was made available to them. He, therefore, held:

> There was no evidence that any of the plaintiffs would have been in any better situation than they presently are in if there had never been any classification of jobs on the basis of sex in the defendant company's plant. Neither was there any evidence that women members carried less weight or were given less consideration by the defendant union than men members.

375 F.Supp. at 820.

Upon appeal our court reversed. 513 F.2d 1040 (6th Cir. 1975). In an opinion authored by Judge William E. Miller, we did not question the correctness of the district judge's findings that plaintiffs had not sought even to reach the top of the packing department and had failed to take advantage of opportunities to transfer into other departments once the barrier thereto had been lifted. We nonetheless ruled that

---

1. Plaintiff Palmer is no longer a party to this suit. Appellants Hitts and Dickey are presently the only participants in this litigation who had made inquiries concerning employment in male lines of progression during the period in which General Mills practiced the discrimination.

even though General Mills' compliance with the state protective statutes, which were later declared invalid, was in good faith, this circumstance did not render its action any less a violation of Title VII preventing discrimination on account of sex.

Two types of seniority are provided under the existing collective bargaining agreements at General Mills' Toledo facility— plant seniority and department seniority:

. Plant seniority is accumulated from the date an employee is hired by the company, and it is used for virtually every purpose except department promotion. It is the standard that governs the transfer from one department to another; determines layoffs and recalls; and entitles employees to vacations, retirement and severance pay. Department seniority, on the other hand, accrues from the moment an employee begins to work within one of the four branches of the plant. Advancement up the line of progression within a particular department is determined on the basis of an employee's length of service in that department. When an employee transfers from one department to another, she loses her acquired seniority and must begin to accumulate within the new department for promotion purposes. Because the plaintiffs in this case could work only in the packing department, their plant and department seniority coincided. The first opportunity for any of these women to transfer was after the implementation of the March 22, 1971, agreement, and as a result, their seniority in any new department could only run from some time after that date.

513 F.2d at 1043.

In our earlier opinion, we observed that even though women could transfer to any other department after March 22, 1971, they were at a disadvantage when competing for a promotion with men who had been free to enter other departments before that date and who consequently enjoyed greater departmental seniority. To that extent, therefore, we found that the departmental seniority system perpetuated the vestiges of discrimination against plaintiffs on account of their sex. 513 F.2d at 1043. We accordingly reversed the judgment of the district court and remanded the action to that court for the formulation of an adequate remedy.

To that point, at least, the plaintiffs had disclaimed any interest in obtaining backpay for any discrimination and sought merely a declaration of liability and injunctive relief. Upon remand, however, plaintiffs asserted their right to backpay for any loss of wages which they may have sustained because of the discriminatory effect of the company's observance of Ohio's protective statutes.[2]

After a full evidentiary hearing, the district judge reaffirmed his previous findings of fact but went on to provide extensive declaratory and injunctive relief designed to dispel any lingering effects of the prior discrimination. To that end, the district court ordered that each of the plaintiffs be allowed to bid upon any vacancy which might occur in any department and that, in so doing, her plant-wide as contrasted to her department-wide seniority should be used in awarding the job. It further provided that if any plaintiff was the successful bidder, her plant-wide seniority would thereafter also be recognized as her departmental seniority. The court provided for "red circle" rates, so that no plaintiff transferring would be required to receive less pay than she was then receiving merely because of the change. The order also provided for training, for furnishing each plaintiff with job descriptions and for a right to return to her former department without penalty if she exercised that option within 60 days after transfer.[3] At the same time the court, relying upon its earlier findings and the fact that our court had not held them clearly erroneous, found that plaintiffs had not established their right to backpay.

---

2. The number of plaintiffs pursuing claims on remand fell to fourteen, thirteen of whom are currently parties to this appeal.

3. The defendants have not cross-appealed from the judgment, so we have no occasion to address the propriety of the injunctive relief which the court entered against them.

Shortly after our earlier remand, the Supreme Court in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), laid down extensive guidelines which it ruled were to limit the exercise of the discretion given the trial judge to award or to refuse to award backpay where a company has been found guilty of racial discrimination in employment practices contrary to Title VII. While not ruling that backpay is mandated in every case where employment discrimination has been found, *see City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702, 719, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court nonetheless held that the discretion concerning backpay which was vested by Congress in the district judge is "not left to the court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles'." 422 U.S. at 416, 95 S.Ct. at 2371, *quoting United States v. Burr*, 25 F.Cas. 30, 35 (No. 14,692d) (CC.Va.1807) (Marshall, C.J.). Most pertinent to this appeal is the holding of *Albemarle* that the absence of bad faith on the part of the employer is not itself a sufficient reason for denying backpay, since Title VII is not so much concerned with an employer's "good intent or absence of discriminatory intent" as it is that the condemned practices be eliminated and that the employees against whom discrimination has been directed be made whole. 422 U.S. at 421–22, 95 S.Ct. at 2374. The Court further observed that where an employer has shown bad faith by maintaining a practice which he knows to be illegal or of highly questionable legality, he has no right whatever to make any claims upon a Chancellor's conscience in exercising the discretion on the question.

[U]nder Title VII, the mere absence of bad faith simply opens the door to equity;

it does not depress the scales in the employer's favor. If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the "make whole" purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in "bad faith".

422 U.S. at 422, 95 S.Ct. at 2374. (footnote omitted).

Mr. Justice Stewart, speaking for the majority in *Albemarle*, noted that the text of Title VII itself recognizes a complete but narrow range of immunity for actions shown to have been taken in good faith in conformity with and in reliance upon an interpretation or opinion of the EEOC. 422 U.S. at 423 n. 17, 95 S.Ct. 2362; *see* 42 U.S.C. § 2000e–12(b). He further noted that some circuits, including our own in *Manning v. International Union*, 466 F.2d 812 (6th Cir. 1972), *cert. denied*, 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973), have denied backpay in limiting judgment to declaratory relief where the employer discriminated on sexual grounds in reliance upon female protective statutes. 422 U.S. at 423 n. 18, 95 S.Ct. 2362. *Albemarle* expressly held that there was no occasion to decide whether this circuit's opinion in *Manning* and like cases decided by other circuits are correct.[4]

In view of the Supreme Court's careful reservation of the question, we reject appellants' suggestion that *Albemarle* expressly commands a reversal of our decision in *Manning*.[5] We recognize that General Mills' compliance with state law has to be viewed as something more than a mere

---

4. Although concurring in the result in *Albemarle*, Mr. Justice Blackmun opined that the majority opinion had, in fact, effectively eliminated the exercise of discretion in such circumstances. 422 U.S. at 448, 95 S.Ct. 2362 (Blackmun, J., concurring in the judgment).

5. *City of Los Angeles, Dept. of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55

L.Ed.2d 657 (1978), the Supreme Court's latest pronouncement on remedies under Title VII, likewise recognized the reservation of the issue of backpay liability arising from an employer's reliance upon and compliance with state female protective legislation. *Id.* at 719 n. 35, 98 S.Ct. 1370.

good faith violation of Title VII, which *Albemarle* held would not immunize an employer from backpay liability. The Supreme Court itself recognized as much in expressly distinguishing this circumstance. The employer's conduct reflects an obedience to a state law which to that time at least was altogether appropriate, and enlightened in the context of the conditions which had existed when it was enacted. Given the employer's dilemma of complying with the specific commands of state law or the more general command of Title VII at a time when the conflict was far from settled, *see Palmer I*, 513 F.2d at 1042, we are hesitant to say that its decision to obey the plain obligations of a presumptively valid state law can simplistically be equated to the motives which might have prompted another company to discriminate for what it privately but voluntarily considered to be proper and good faith reasons.

On the other hand, the fact of the employer's good faith reliance upon the Ohio protective statutes does not diminish the injury which the employees could have suffered from the discrimination. Following Mr. Justice Stewart's admonition that "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination," 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted), we recognize that the basic focus of the inquiry on the backpay issue is upon the employees, not the employer. Nevertheless, in fashioning a remedy under Title VII, the circumstances of the employer and the background of the violation remain important components in the equitable balance. *See, e.g., City of Los Angeles, supra,* 435 U.S. at 719–23, 98 S.Ct. 1370.

■ The foregoing considerations aside, however, Judge Young found in his first

opinion that there was no evidence that the plaintiffs would be in any better position than they are presently in if there had never been any classification of jobs on the basis of sex in the company's plant. This finding was not disturbed by our earlier decision on appeal and remains fully supported by the evidence upon this review.[6] We do not read *Albemarle Paper* or any other later decisions as relieving a discriminatee of the burden of going forward with the evidence to show the amount of backpay which is properly owing by virtue of the discriminatory conduct. *See EEOC v. Detroit Edison Co.*, 515 F.2d 301, 314–16 (6th Cir. 1975), *vacated and remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 259–61 (5th Cir. 1974), *appeal after remand*, 576 F.2d 1157, 1210–13 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

The evidence developed at trial conclusively demonstrates the absence of economic injury. Although there was some difference in pay scales among the four departments, it was at no time great. The record further shows that plaintiffs themselves preferred at all times to remain on the day shift and not to seek overtime employment. As the trial court found, "[t]he plaintiffs cannot be allowed to enjoy the shift and hour provisions which have limited their earnings without regard to seniority, discriminatory or otherwise, and also be given, retroactively, the monies that they could have, but chose not to, earn." While we regret that the trial judge saw fit to characterize the plaintiffs' refusal to improve themselves as "indolence," since it may well be that the demands of family and other reasons not connected with employment conditions may have induced their actions, we cannot fault his finding that the plaintiffs would not be in any different position now than they are, had they from the onset

---

**6.** Plaintiffs urge that the matter now be remanded for reference to a master to determine the question of backpay. There is no showing, however, that the two trials upon the merits in this cause were not fully adequate for this purpose.

had a broader opportunity to transfer to other departments of the company before 1971. Most notably, none of the plaintiffs sought to transfer to other departments in the years since March, 1971, when all impediments to their ambition were removed. They likewise forewent opportunities for advancement in the packing department itself despite the absence of any employment practice which prevented them from doing so. The record abounds with evidence that other employees in all the departments were fully able to enter and to advance rapidly to the top pay scales in each department, even though they themselves possessed both a plant-wide and departmental seniority far less than that of the plaintiffs, owing to entry dates after March, 1971.[7]

Accordingly, it is clear that the plaintiffs' claim, lately made, that their present circumstances are due to a lack of upward mobility within the company is without foundation in fact, and the trial court's finding to that effect is not clearly erroneous.

The judgment of the district court is affirmed.

---

7. For example the record reflects that since 1971, there had been 137 job bids in the processing department and 73 bids in the material handling department. The wage rates for these jobs were as high as $6.67 per hour, yet no plaintiff submitted a bid. Furthermore, plaintiffs failed to bid on any of the top 15 jobs in their own department even though these jobs were duly posted for bidding and carried a top rate of $6.48 per hour. In contrast, the evidence showed that there were several employees with less plant seniority than plaintiffs who, after March, 1971, bid into jobs which took them to the very top of their department.