**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant Cross-Appellee,**

v.

**The MONARCH MACHINE TOOL COMPANY; and Local Lodge No. 996 of the International Association of Machinists and Aerospace Workers, AFL–CIO, Defendants-Appellees Cross-Appellants.**

**Nos. 77–3526, 77–3527.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1979.

Decided Nov. 14, 1980.

Designated for Publication June 22, 1984.

Odas Nicholson, Asst. Gen. Counsel, MacArthur Drake, E.E.O.C., Chicago, Ill., William Ng, argued, Sharyn Lynn Danch, EEOC, Counsel, Washington, D.C., for plaintiff-appellant cross-appellee.

Richard A. DuRose, argued, Smith & Schnacke, Dayton, Ohio, for Monarch.

Bruce E. Pence, Dayton, Ohio, for Local Lodge No. 996.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

ENGEL, Circuit Judge.

This Title VII litigation had its genesis when charging parties Carol Ross and Melissa Hanna applied to the Monarch Machine Tool Company (Monarch) in Sidney, Ohio, for jobs as general laborers and were rejected. Both women filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) on the same day. The EEOC brought suit against Monarch and Local 996, International Association of Machinists, alleging that, from July 2, 1965 to the time of the suit, the company had intentionally engaged in unlawful employment practices, in violation of section 703(a) of Title VII of the Civil Rights Act of 1964, by refusing to hire women for factory work until July, 1974, and thereafter failing to hire women at the same rate as men. In its prayer for relief, the Commission sought a permanent injunction against the discriminatory employment practices, and sought to institute a program to provide equal employment opportunities for women "having the effect of eradicating the defendant's past and present unlawful practices." The Commission also requested the court "to order the company to make whole those persons adversely affected by the unlawful employment practices described herein, by providing appropriate backpay, with interest, in

an amount to be proved at trial" and to afford "other affirmative relief necessary to eradicate the effects of its unlawful employment practices."

At trial, it was shown that Monarch had hired no women for factory work until July, 1974. The reason given by the company for this apparent discrimination was its reliance upon Ohio's female protective statutes, which effectively limited the company's ability to hire female employees for general labor of the nature required by Monarch.[1] While the Ohio Supreme Court declared that these statutes conflict with Title VII, *Jones Metal Products Co. v. Walker*, 29 Ohio St.2d 173, 281 N.E.2d 1 (1972), the company sought to establish before the district court that the lack of rest room facilities for women and budget restrictions caused by the company's financial condition restricted its ability to hire women for factory work until July, 1974, when it acquired temporary rest room facilities.

The EEOC sought a bifurcated trial at which the general allegations of sex discrimination would be established initially with specific relief to be later determined in separate proceedings. The district court, however, without ruling on the viability of class relief, brought the case on for trial on the merits generally. In a written opinion, the district judge ruled that the company's reliance upon the lack of rest room facilities was a "subterfuge" and held that Monarch had improperly refused to hire Ross and Hanna because they were women. He thereupon proceeded to award Ross and Hanna backpay from the date the company refused them employment on February 26, 1974, until July, 1974, when Monarch began generally hiring women. The court held that the evidence before it did not indicate that either Ross or Hanna had failed to seek other work diligently or had earned other wages which would reduce the award of backpay, and accordingly awarded $2,664 to both women, reflecting an hourly rate of $3.70 for an 18-week period. The district judge issued an injunction prohibit-

ing Monarch from committing similar acts of discrimination in the future. The court also dismissed the charges against Local 996. Finally, the district judge held that the Commission had failed to prove that any other females were the victims of discrimination and declined to reopen the proceedings for the presentation of proof to that effect.

## I.

■ At the time this case was tried in the district court, considerable uncertainty existed whether actions brought by the EEOC under Title VII must, if they sought class-wide relief, proceed subject to the specific rules governing class actions set forth in Rule 23 of the Federal Rules of Civil Procedure. The Supreme Court has recently fully resolved that issue in *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Relying upon the language of Title VII itself, the legislative intent underlying the 1972 amendments to the Civil Rights Act and the enforcement procedures which existed prior to the amendments, the Supreme Court held that Rule 23 is not applicable to an enforcement action brought by the EEOC under section 706. Because it is most apparent that had the trial judge possessed the advantage of the Supreme Court's ruling in *General Telephone Company of the Northwest, supra*, at the time of trial, he would have proceeded with the class action aspects of the suit in the manner sought by the Commission, we note at the outset that a general remand is necessary for this purpose.

A number of other issues have been raised by the parties in their cross-appeals. Because the case must in all events be remanded, we also proceed to deal with these issues, finding merit in many of them, and conclude that a vacation of the entire judgment and *de novo* trial is the means most fairly and efficiently to remedy the errors found herein.

---

1. Ohio Revised Code §§ 4107.40–4107.53 (Baldwin's 1977). These provisions prohibit the employment of women in jobs which require lift-

ing more than twenty-five pounds repeatedly and restrict the number of hours which women can work per day and per week.

## II.

■ In its cross-appeal Monarch complains that the trial judge, in finding it guilty of sex discrimination, relied upon certain evidence which he requested that the company submit at the close of the trial. Monarch complied, but the district judge did not permit the company to reopen the proof to present any rebuttal evidence concerning the relevance and accuracy of that evidence. Specifically, the district judge at the close of trial requested all of the applications for employment which Monarch received from October, 1973 through October, 1974, stating at the time:

I mean I am not going to have another hearing on this. I'm not taking the position that this is critical information or even dispositive information. I simply want to see it for my own background information, and if counsel wishes to make a copy available to you, I don't care, but I am not going to require it.

Although the trial judge stated that the applications would not be considered dispositive, he in fact specifically relied upon this evidence in finding Monarch guilty of discrimination. In our view, it was error for the trial judge to have so considered the evidence without giving Monarch an opportunity for a response, and to have used it for a purpose and to an extent not indicated by him when he requested it.

The circumstances here are not unlike those in *Wright v. Southwest Bank*, 554 F.2d 661 (5th Cir.1977), where the Fifth Circuit held that it was error for the trial court to have considered evidence which was filed after the parties had completed the presentation of their proof. We agree with the following observation in *Wright:*

A trial judge, sitting without jury, is entitled to great latitude concerning the admission or exclusion of evidence, but it is error to accept evidence ex parte because it is inherently unfair to allow one party to put evidence before the court

without allowing his opponent the opportunity to test its validity.

554 F.2d at 663 (footnote omitted). *See also Fireman's Fund Insurance Co. v. Wilburn Boat Co.*, 259 F.2d 662 (5th Cir. 1958).[2]

Because we are remanding for a trial *de novo*, Monarch will have an opportunity to present evidence to attempt to explain the information contained in the applications and to dispel the inferences which the district judge drew therefrom. Likewise, the EEOC may wish to offer additional evidence to explain the significance of these applications because it, like Monarch, was denied the opportunity to address this issue in the district court.

## III.

■ Monarch in its cross-appeal also asserts that the district judge erred in granting general injunctive relief. It argues that such a grant was unnecessary because since July, 1974, Monarch had discontinued any discriminatory hiring practices with respect to female applicants.

As we have noted before, because of our general vacation of the judgment below and remand for new trial, it is not possible to anticipate what may be the ultimate judgment of the district court on remand. It is true that we have upheld the denial of injunctive relief in other Title VII cases where the evidence showed that, while there may have been discriminatory practices in the past, there was no longer any evidence of such discrimination and such relief was not needed. *Donnell v. General Motors Corp.*, 576 F.2d 1292 (8th Cir.1978). At the same time we have consistently recognized that the matter is one for the proper exercise of judicial discretion. Thus, in *EEOC v. New York Times Broadcasting Service, Inc.*, 542 F.2d 356 (6th Cir.1976), we upheld a district court's grant of an injunction where the evidence indi-

2. As noted in *Wright, supra*, at 663 n. 5, the result is the same both before and after the adoption of the Federal Rules of Evidence, Rule 611(a), which provides the trial judge with broad discretion over "the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth ...."

cated that the employer had in fact discontinued its discriminatory practices. There we observed:

> The defendant in its brief and the district court in its opinion rely heavily upon the corrective practices which have been taken by the television station since the filing of Ms. Wilson's complaint and the filing of the EEOC action in the district court. It may be true that under new management more enlightened attitudes have prevailed and that this has had a distinctly beneficial effect upon employment practices and resulted in a more balanced composition of the staff at the television station. However, we agree with the EEOC that the voluntary changes effectuated by the defendant, as salutary as they may be, do not render moot the questions presented in the litigation or make judicial sanctions inappropriate, *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972); *United States v. I.B.E.W., Local 38,* 428 F.2d 144 (6th Cir.1970), but are rather more properly considered and must inevitably bear upon the extent of any corrective action to be ordered.

Id. at 361. *See also Manning v. International Union,* 466 F.2d 812 (6th Cir.1972).

In his conclusions of law, the trial judge here held that "[w]here charging parties have proved discrimination, such parties are entitled to damages and the Equal Employment Opportunity Commission is entitled to injunctive relief." To the extent that such a finding endeavors to set forth an inflexible rule, it would in our view be inconsistent with the grant of discretion given a district judge under 42 U.S.C. § 2000e–5(g). We emphasize with respect to injunctive relief that it is fundamentally an exercise of equitable power and we leave to the discretion of the trial judge on remand the final decision whether such relief is appropriate under all the circumstances of the case, if it is shown that the employer has been guilty of the discriminatory practices alleged.

## IV.

Although the trial court appears to have determined that Monarch discriminated generally against women on account of their sex during the period in question, it limited individual relief to the two charging parties, finding that proof had been presented only as to them. We conceive that this ruling was primarily the result of the trial judge's conclusion that the EEOC had failed to comply with Rule 23 as a condition to seeking broader relief. This, of course, has subsequently been held to be unnecessary in Title VII actions brought by the commission. See Part I, *supra.*

■ Because the EEOC powers are not limited by Rule 23 and because it never abandoned its right to seek class-wide relief, we believe that the trial should have been bifurcated, if class-wide discrimination was properly found. The burden and order of proof in class actions under Title VII has rather clearly evolved in *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and more particularly in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Thus, as pointed out by the Supreme Court in *Teamsters,* the Commissioner's burden at the liability stage is:

> to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer. At the initial, "liability" stage ... the government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a *prima facie* case that such a policy existed.

431 U.S. at 360, 97 S.Ct. at 1867.[3]

■ If on retrial the trial court finds that a policy of discrimination existed in Monarch's refusal to hire women for general labor employment, we then agree with the position of the EEOC upon appeal, that

---

**3.** Although we realize the Supreme Court in *Teamsters* was discussing the proper procedure for the district court to follow in a section 707 pattern-and-practice suit, it adopted this procedural framework from *Franks* which dealt with class actions under section 706. 431 U.S. at 358–61, 97 S.Ct. at 1866–67.

such a pattern of discrimination establishes a *prima facie* case of liability to all women rejected during the period of unlawful exclusion from 1972 to 1974. It further follows that if the district court makes a general finding of discrimination, the burden is upon the company to prove that qualified individual women who applied for available employment openings were rejected for non-discriminatory reasons. *Franks v. Bowman Transportation, supra,* 424 U.S. at 773 n. 32, 96 S.Ct. at 1268 n. 32.

## V.

In awarding backpay to the charging parties Ross and Hanna, the trial judge found that the average hourly rate between February, 1974 and July, 1974 in job level II was $3.70 per hour. The trial judge further found that:

> plaintiffs are entitled to damages for the period beginning February 24, 1974, when they were discriminated against because of sex until July, 1974, when defendant ceased discriminating against women applicants. Assuming a pay rate of $3.70 per hour and a 40-hour week, plaintiffs are each entitled to the sum of $148 per week for 18 weeks, or a total of $2,664.00.

Both parties appeal from this finding. Both agree that the hourly rate chosen by the trial judge, $3.70, was incorrect, but disagree as to the appropriate rate. The EEOC claims the rate was $3.18 per hour, the wage which Monarch paid certain male applicants whom the trial judge determined to possess qualifications similar to the charging parties. The company for its part relies upon the collective bargaining agreement, which states that after November 25, 1973, employees at level II earned $2.94 per hour and employees at level III received $3.06 per hour. There is evidence, however, to show that during the same period, the company did in fact pay $3.18 per hour to some of its employees at level II and $3.35 per hour for employees hired at level III. Because both parties agree that the finding of the trial court was wrong but disagree as to the correct figure, the matter remains open for final resolution and reconsideration by the trial judge.

▉ The company further complains that the district judge failed to consider other wages which the women earned or could have earned during that period. In fact the trial judge did make the following finding: "[N]o evidence has been produced as to a lack of diligence of charging parties in seeking other employment, nor has evidence been produced as to actual earnings by charging parties during the time in question." Both Hanna and Ross testified, however, that they were, in fact, employed during portions of the period for which the district court awarded damages. Carol Ross stated she worked from May, 1974 through February, 1975, earning $2.00 per hour and working forty hours per week. Melissa Hanna testified that she also worked forty hours per week except for certain layoffs and earned $3.70 per hour initially and was, in fact, earning $4.95 at the time of trial. Clearly the interim earnings of the two women should have been ascertained and should have reduced the award of backpay. Upon remand, the district court should take such evidence into account in making an award.

▉ Monarch also complains that Ross did not diligently seek other employment and that her backpay should, therefore, be reduced. The company claims that the fact that Hanna was able to obtain other employment at a wage rate higher than paid at Monarch demonstrates that Ross, who possessed similar qualifications, did not make sufficient effort to locate a job. In support of this proposition, Monarch relies primarily upon *Jurinko v. Edwin L. Wiegand Co.,* 331 F.Supp. 1184 (W.D.Pa.1971). In *Jurinko* two women successfully proved that they had been refused employment by Wiegand because of discrimination. In awarding backpay, the district judge reduced the award of backpay to one because of evidence that the other had successfully obtained employment. *Id.* at 1188. In essence, the company argues that, as a matter of law, the experience of the charging party most successful in obtaining alternate employment should set a standard for awarding backpay to other claimants. We decline to establish such a rule. While

evidence of employment opportunities is, of course, relevant to the question of whether a given employee was diligent in seeking alternative employment, we are unwilling to so encumber a statutory scheme which vests discretionary authority in the district judge, to be exercised on the basis of all the relevant facts in each case. Moreover, it is important to remember that once discrimination is shown, the defendant has the burden of proving that the employee did not diligently seek other employment. *Kaplan v. International Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1363 (9th Cir.1975). *See Rolfe v. County Board of Education of Lincoln County, Tenn.*, 391 F.2d 77 (6th Cir.1968).

### VI.

Finally, in its appeal, the EEOC maintains that the trial judge erred in cutting off the award of backpay to Ross and Hanna at July, 1974.[4] The trial judge does not articulate his reasons for cutting off the award on that date, but we note that this was the date when Monarch commenced hiring women for the general labor force. Upon the record here, however, we seriously doubt that a backpay cutoff date based upon this factor was justified. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The cessation of a general policy of discrimination is not a basis for terminating the award of backpay for prior victims absent equitable considerations which overrule the law's policy of providing full and adequate relief to those injured by employment discrimination. It is true that some support for the trial judge's action can be found in *Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir.1974), wherein our court upheld the trial court's refusal to award backpay beyond the date the company ceased its discriminatory practices. Any doubt as to whether the good faith of

the employer alone is an adequate basis for denying backpay, however, was in our judgment fully dispelled by *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In *Albemarle* the Court wrote:

> Where an employer *has* shown bad faith—by maintaining a practice which he knew to be illegal or of highly questionable legality—he can make no claims whatsoever on the Chancellor's conscience. But, under Title VII, the mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor. If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the "make whole" purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in "bad faith." (footnote deleted). Title VII is not concerned with the employer's "good intent or absence of discriminatory intent" for "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." *Griggs v. Duke Power Co.*, 401 U.S., [424] at 432, [91 S.Ct. 849 at 854, 28 L.Ed.2d 158]. See also *Watson v. City of Memphis*, 373 U.S. 526, 535 [83 S.Ct. 1314, 1319, 10 L.Ed.2d 529] (1963); *Wright v. Council of City of Emporia*, 407 U.S. 451, 461–462, 92 S.Ct. 2196, 2202–2203, 33 L.Ed.2d 51 (1972).[17] To condition the awarding of backpay on a showing of "bad faith" would be to open an enormous chasm between injunctive and backpay relief under Title VII. There is nothing on the face of the statute or in its legislative history that justifies the creation of drastic and categori-

---

**4.** The EEOC does not dispute the trial judge's commencement date of the awards to Hanna and Ross as the date when the company refused to hire them on February 26, nor does it appear generally to dispute our circuit's holding that a trial judge might properly exercise his discretion to deny awards of backpay prior to March 15, 1972, the date when Ohio women's protec-

tive statute was declared unconstitutional by the Ohio Supreme Court, *Jones Metal Products v. Walker*, 29 Ohio St.2d 172, 281 N.E.2d 1 (1972). *See generally, Manning v. International Union*, 466 F.2d 812 (6th Cir.1972), *cert. denied*, 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973); *Palmer v. General Mills, Inc.*, 600 F.2d 595 (6th Cir.1979).

1452

cal distinctions between those two remedies.[18]

[17] Title VII itself recognizes a complete, but very narrow, immunity for employer conduct shown to have been undertaken "in good faith, in conformity with, and in reliance on any written interpretation or opinion of the [Equal Employment Opportunity] Commission." 42 U.S.C. § 2000e–12(b). It is not for the courts to upset this legislative choice to recognize only a narrowly defined "good faith" defense.

[18] We note that some courts have denied backpay, and limited their judgments to declaratory relief, in cases where the employer discriminated on sexual grounds in reliance on state "female protective" statutes that were inconsistent with Title VII. *See, e.g., Kober v. Westinghouse Electric Corp.,* 480 F.2d 240 (CA 3 1973); *LeBlanc v. Southern Bell Telephone & Telegraph Co.,* 460 F.2d 1228 (CA 5 1972); *Manning v. General Motors Corp.,* 466 F.2d 812 (CA 6 1972); *Rosenfeld v. Southern Pacific Co.,* 444 F.2d 1219 (CA 9 1971). There is no occasion in this case to decide whether these decisions were correct. As to the effect of Title VII on state statutes inconsistent with it, see 42 U.S.C. § 2000e–7.

Id. 422 U.S. at 422–3, 95 S.Ct. at 2373–74. *See also Palmer v. General Mills, Inc.,* 513 F.2d 1040, 1042 (6th Cir.1975), and *Palmer v. General Mills, Inc.,* 600 F.2d 595, 598–600 (6th Cir.1979).

*Albemarle* itself was foreshadowed by this circuit's decision in *Head v. Timken Roller Bearing Co.,* 486 F.2d 870 (6th Cir. 1973), where Judge Miller, speaking for the court, emphasized that the prime object of a backpay award was to make the injured party whole and that this consideration was generally unaffected by the motivation of the employer:

The finding of discrimination by the district court, in addition to the nature of the relief (compensatory as opposed to punitive), and the clear intent of Congress that the grant of authority under Title VII should be broadly read and applied mandate an award of back pay unless exceptional circumstances are present.

Congress evidently intended that the award of back pay should rest within the sound discretion of the trial judge. Although appellate courts are loathe to interfere with the exercise of such discretion by a trial court, it is recognized that it is not free from appellate scrutiny. In *Moody v. Albemarle Paper Co.,* 474 F.2d

134, 141 (4th Cir.1973), the Fourth Circuit said:

Discretion in a legal sense necessarily is the responsible exercise of official conscience on all the facts of a particular situation in the light of the *purpose for which the power exists.* Bowles v. Goebel, 151 F.2d 671, 674 (8th Cir.1945) (emphasis added). Thus in determining the proper scope of the exercise of discretion, the objective sought to be accomplished by the statute must be given great weight. *Hecht Co. v. Bowles,* 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). Where a district court fails to exercise discretion with an eye to the purposes of the Act, it must be reversed. *Wirtz v. B.B. Saxon Co.,* 365 F.2d 457 (5th Cir. 1966); *Shultz v. Parke,* 413 F.2d 1364 (5th Cir.1969).

We find no reasonable basis for denial of such relief on the present record. The 1968 change in Timken's seniority system does not ameliorate the injury already suffered. Good faith by Timken either during the 1965–68 period or thereafter is not a valid defense to a claim for back pay.[10]

[10] This Court in *Manning v. International Union,* 466 F.2d 812 (6th Cir.1972), denied back pay despite a showing of discrimination. That case is easily distinguishable from the case at hand, for in *Manning* the defendants were caught between two statutes, one directing them not to discriminate and one directing them to discriminate.

*Id.* at 876–7. Precisely when an award of backpay should end appears to depend upon the circumstances in each case and upon an application of the broad "make whole" principles enunciated by the Supreme Court in *Albemarle* and by our own circuit in *Head, Palmer,* and *Manning v. International Union,* 466 F.2d 812 (6th Cir.1972). *See also Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 251–53 (5th Cir.1974).

The EEOC argues that because Ross and Hanna should have been employed in February, 1974, they are entitled to backpay up to the date of any final judgment in the district court, and presum-

ably this would carry the award up to the final date of judgment upon retrial, less of course any sums earned in other employment. Generally, where an employer has discriminatorily refused to hire an employee, contrary to that employee's rights under Title VII, the award of backpay will be computed from the date of first refusal until final judgment. As a leading treatise in this area notes:

> In the individual case, the termination date of back-pay liability is ordinarily the date of an offer of. employment, reinstatement, or promotion, whether pursuant to a court decree or voluntarily. There may be some instances in which an earlier date may be appropriate. Some courts have terminated back pay as of the date the plaintiff obtained a better paying job than the job sought from the defendant. In a promotion case, the period of liability will end if plaintiff voluntarily quits his employment with the defendant absent a constructive discharge. Some courts have terminated the backpay period after a specified time on the ground that it was speculative whether the plaintiff would have continued in the employer's employ beyond that period. The backpay period will end if the plaintiff dies, retires, or otherwise is not eligible for employment or reinstatement. If the defendant sells his business and therefore could not have offered employment or reinstatement after that date, back pay will end upon the sale. If a discharged plaintiff does not seek reinstatement, it could be argued that the filing of a complaint not seeking reinstatement constituted a waiver to reemployment from that date forward and terminated the back-pay period.

Schlei and Grossman, Employment Discrimination Law 1240–41 (1974).[5] The district judge was mistaken in terminating the award of backpay to Ross and Hanna on the date the company began hiring women. In the absence of the type of compelling considerations present in *Manning* and *Palmer II, supra,* we hold that the limitation on the recovery of backpay which the

district court imposed in this case frustrates the purposes of Title VII.

## CONCLUSION

While we regret the necessity of remanding for a full retrial, nothing herein is intended to preclude the court and the parties from agreeing to any economies in time which may come from the use of the record already before the court. The important objective to be achieved upon remand is, of course, a full, fair and complete trial to consider, initially, the general question of discrimination. If the district court concludes discrimination existed, it should then conduct a separate hearing to establish which individuals are entitled to relief.

Reversed and remanded for a new trial or other proceedings consistent herewith.

---

5. This treatise was cited with approval by the Supreme Court in *Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).