**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff–Appellant,**

v.

**NORTHWEST AIRLINES, INC.,
Defendant–Appellee.**

No. 98–1667.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1999.

Decided Sept. 13, 1999.

Robert K. Dawkins, Trial Attorney, E.E.O.C., Detroit, MI, Barbara L. Sloan (argued and briefed), E.E.O.C., Office of General Counsel, Washington, DC, for Plaintiff–Appellant.

Donna J. Donati, George D. Mesritz, Miller, Canfield, Paddock & Stone, Detroit, MI, Max C. Heerman (briefed), Clifford S. Anderson (briefed), Jean F. Holloway (argued and briefed), Dorsey & Whitney LLP, Minneapolis, MN, for Defendant–Appellee.

Before: NELSON and MOORE, Circuit Judges; McKEAGUE,* District Judge.

MOORE, J., delivered the opinion of the court, in which McKEAGUE, D. J., joined. NELSON, J. (p. 703), delivered a separate concurring opinion.

## OPINION

MOORE, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) brought this suit in the Eastern District of Michigan on behalf of Gloria Hamilton and other African–American employees of Northwest Airlines, Inc.'s (Northwest's) Detroit Cargo facility. The district court, noting that the complaint was based in part on a consent decree entered by the district court for the District of Minnesota, transferred the case there. The district court for the District of Minnesota granted Northwest summary judgment on certain of the EEOC's claims, but transferred one remaining claim back to the Eastern District of Michigan. The district court for the Eastern District of Michigan then granted Northwest summary judgment with respect to this last claim. The EEOC appealed to this court from the final judgment of the Eastern District of Michigan.

We **REVERSE** and **REMAND** for further proceedings.

## I. FACTS AND PROCEDURE

Hamilton began working for Northwest in 1967 as a Transportation Agent in Detroit. Northwest promoted Hamilton a number of times until she reached her current position, Cargo Service Manager.

The EEOC alleges that since May 1995, Hamilton and other African–American employees witnessed and were exposed to incidents of harassment, some of which were directly related to race, and other incidents that they perceived as race-related. These incidents are outlined below.

In early 1995 Hamilton attended a Northwest conference. After a well-done presentation by another manager, Charlie Anhut, someone said "three kudos for Charlie." Another manager then said "Is that three, now making it KKK." J.A. at 86 (EEOC Aff. of Hamilton).

On May 21, an employee reported a sign hanging in the facility warehouse. The sign was soliciting members for the Michigan Militia. The sign also said "no tree-huggin' ____". The last word was crossed out, but Hamilton attests that she believed the omitted word to be "niggers," as she was familiar with the phrase "tree huggin' nigger." J.A. at 174 (Aff. of Hamilton). A Customer Service Manager, Frank Sundquist, threw the sign out. Hamilton complained to Ken Gray, the District Manager, and Julie Lewis, Director of Human Resources. Gray expressed alarm but did not investigate; Lewis told Hamilton that it was Hamilton's responsibility to deal with such incidents.

On May 22, a noose was found hanging in the employee lunch room. Hamilton claims there was no investigation of this incident.

Later in 1995 a metal object resembling the Black Sambo characters turned up in Hamilton's work area, which she shared with three white managers. Hamilton viewed this object as racist.

Hamilton took a leave of absence after the death of her son. Upon her return, she found a cartoon of Christopher Robin and Winnie the Pooh taped to the door of a central work area. Christopher Robin was saying to Pooh: "So you see Pooh, Life just basically sucks + then you DiE! DEAL With it!" J.A. at 185. Hamilton interpreted this sign as an insult directed at the death of her son.

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

In the fall of 1995 employees discovered a drawing on the floor of the warehouse labeled the "CSA safety zone." J.A. at 88. The symbol was a circle divided into thirds with sets of double dots at the inner point of each third of the circle. Hamilton learned that the symbol represented what a black man sees after he is thrown into a well by members of the Ku Klux Klan.

Northwest offers some evidence that it responded to these incidents. Ken Gray, the district manager above Hamilton, attested that Hamilton told him about the Michigan Militia sign but she did not inform him that she interpreted it as being racist. Hamilton claims she did tell Gray she was offended by the sign due to her race. When he later learned at the onset of this action that Hamilton thought it was racist, he interviewed some employees, but decided that no action was necessary. Gray claimed that he was not aware of the noose in the lunchroom, and that he never heard about the Winnie–the–Pooh sign or the Black Sambo figure. Hamilton disputes part of this, saying that Gray was e-mailed about the noose incident. Gray was aware of the "CSA Safety Zone" symbol, but says he was not aware that it was a Ku Klux Klan symbol. He ordered that it be washed off because he felt it represented an ongoing dispute between two groups of employees and that it was inappropriate.

Ken Gray further attests that in September 1995 he issued a bulletin regarding alleged incidents of harassment. Northwest's Vice President of Cargo for North America and Europe John Williams held group meetings to address harassment concerns. Hamilton alleges that no group meetings were held to deal with harassment.

The EEOC alleges that other African–American employees were affected by the incidents above as well as other incidents. Lolita Kelly attests that she saw the Mich-igan Militia sign and the noose in the lunchroom. Steve Dyer attests that he saw the Ku Klux Klan symbol in a restroom at the facility. Dyer also saw graffiti on the wall of the restroom calling the Million Man March the "Million Monkey March" and graffiti saying that "crime was low because all the niggers are in Washington." J.A. at 180 (Aff. of Dyer). He complained to his supervisor who allegedly did nothing. He also saw the Ku Klux Klan symbol on the locker of an employee who sometimes walked around carrying a noose.[1] Finally, Willie Jones attests that another employee showed him a picture of gorillas in a tree and asked him if it was his family tree. After he complained, management sent him a letter saying that his claims could not be substantiated but that they had nonetheless formally coached the employee who had insulted him. Julie Lewis attests that Hamilton was Jones's supervisor, and that he should have complained to her.

Hamilton filed a charge with the Michigan Department of Civil Rights and the EEOC in December 1995. The charge included certain of the incidents listed above, in addition to a charge that Hamilton was denied promotion to a district manager position in 1995. In September 1996 the EEOC filed a complaint against Northwest alleging that Hamilton was subjected to racial harassment in violation of § 703(a) of Title VII (42 U.S.C. § 2000e–2(a)(1)). The EEOC claimed that Northwest had failed to comply with a consent decree, entered in a class action suit, *Aburime v. Northwest Airlines, Inc.*, C.A. No. 3–89–402, that prohibited Northwest from engaging in or permitting racial harassment of its employees. The consent decree had been entered by the district court for the District of Minnesota.

Northwest filed a motion to dismiss the EEOC's suit for improper venue, arguing that any challenge to the *Aburime* consent

---

1. Northwest argues that Dyer worked in an entirely different facility than Hamilton, under different managers and supervisors, and that therefore events relating to him should not be considered.

decree must be brought in the District of Minnesota. The district court, disagreeing with Northwest, found that venue for the case was proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) (which explains that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"), and thus refused to dismiss or transfer the case under 28 U.S.C. § 1406(a) (transfer or dismissal for improper venue). The district court granted Northwest's motion to transfer pursuant to 28 U.S.C. § 1404(a), however, which allows for transfer in the district court's discretion to any other proper district when it furthers the convenience of parties and witnesses and is in the interest of justice. The *Aburime* consent decree mandated that any grievances alleging noncompliance must be brought "by motion with the Court." J.A. at 20 (1/22/97 Op. & Order of E.D. Mich.). The district court in Michigan interpreted the consent decree as requiring such grievance actions to be brought before the district court for the District of Minnesota.

The EEOC then filed an amended complaint in the District of Minnesota. This complaint referred in its opening paragraph to "unlawful employment practices on the basis of race and sex." J.A. at 22. The complaint also noted that in addition to Hamilton, "[Northwest] has also subjected other persons similarly situated to racial harassment in violation of Title VII." J.A. at 24. The EEOC sought general injunctive relief and compensatory and punitive damages to make Hamilton and the others whole.

Northwest thereafter filed a motion to compel arbitration with respect to claims related to Hamilton and to dismiss all other claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Judge Alsop of the district court for the District of Minnesota, treating Northwest's motion to dismiss as a motion for summary judgment, denied the EEOC's attempt to dismiss its claims without prejudice, granted summary judg-

ment with respect to the EEOC's claims of sex-based harassment, dismissed the EEOC's claims that were based on the consent decree, and dismissed Hamilton's individual claims of race-based harassment and discrimination in favor of arbitration based on an arbitration agreement between Hamilton and Northwest. The district court, however, refused to dismiss the EEOC's class-wide claims of a racially-hostile work environment at Northwest's Detroit Cargo facility. Moreover, because the facts underlying the claim of hostile work environment occurred in Michigan, the Minnesota district court, utilizing 28 U.S.C. § 1404(a), transferred this remaining claim back to the Eastern District of Michigan.

Judge Friedman, of the district court for the Eastern District of Michigan, addressing only the putative class claim, determined that the evidence was insufficient to survive summary judgment. Judge Friedman then granted summary judgment to Northwest on this remaining claim. The EEOC appealed the orders of both district courts to this court. J.A. at 53 (Notice of Appeal, appealing "from an Order granting Defendant Northwest Airlines, Inc.'s Motion for Summary Judgment, and an Order granting Defendant's Motion to Compel Arbitration").

## II. ANALYSIS

### A. Jurisdiction

Northwest raises two challenges to our jurisdiction. First, Northwest argues that in the Eighth Circuit an order to arbitrate is not appealable until after the arbitration has taken place. Thus, since the EEOC has not attempted to arbitrate this claim, the EEOC's appeal is premature. We disagree with Northwest's reading of Judge Alsop's order. The EEOC was not ordered to arbitrate. Judge Alsop concluded that Hamilton would have to arbitrate her claim, and thus the EEOC could not file a Title VII action based on Hamilton's underlying claims. There is no indication by

Judge Alsop that he expected the EEOC to arbitrate Hamilton's claims. *See* J.A. at 37 (12/8/97 Order of D. Minn. at 9) ("because Ms. Hamilton's individual claims are subject to arbitration, all claims brought by the EEOC on behalf of Ms. Hamilton will be dismissed"). Certainly the EEOC may appeal a final order that dismisses its claims.

Second, Northwest argues that if Judge Alsop's arbitration order is appealable, the EEOC was required to appeal the decision within sixty days of the order, *see* FED. R.APP. P. 4(a)(1)(B), and therefore the EEOC's appeal is untimely and must be dismissed. We disagree. Judge Alsop's order was not final and appealable. Judge Alsop granted Northwest partial summary judgment and then transferred the case back to the Eastern District of Michigan. Under Federal Rule of Civil Procedure 54(b), a partial summary judgment is a final appealable decision "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." FED.R.CIV.P. 54(b). The district court must certify that a partial summary judgment may be appealed immediately. *See General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir.1994) (explaining that the district court must expressly direct that judgment as to a certain claim or claims is final and expressly determine that there is no reason to delay review; the district court must provide a clear explanation of its rationale for each determination). Although Judge Alsop reminded the EEOC "that the only remaining claim in this action is race discrimination due to a racial hostile work environment at the Detroit, Michigan service center," J.A. at 38, he did not say that his judgment was final and appealable, and he did not certify any of the issues for interlocutory review. There is also no evidence that the EEOC sought permission under 28 U.S.C. § 1292(b) for an interlocutory appeal of this order. The EEOC could not have appealed Judge Alsop's adverse order to the United States Court of Appeals for the Eighth Circuit, and indeed, the EEOC did not appeal the order. "When an action is transferred it remains what it was and all further proceedings in it are merely referred to another tribunal, leaving untouched whatever already has been done." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3846, at 362 (1986 & Supp.1999). Only after Judge Friedman entered his order with respect to the EEOC's last claim was the decision final, and thus appealable. *See* 28 U.S.C. § 1291.

We thus find ourselves in the position of reviewing a final judgment partially disposed of in a district court of another circuit. Although unusual, this case is properly before us. Neither party contested Judge Alsop's partial transfer back to the Eastern District of Michigan, and indeed, we will not review the transfer. *See* 15 WRIGHT, MILLER & COOPER § 3846, at 359 (1986 & Supp.1999) ("The transfer order [itself] is not subject to review by the transferee court or its court of appeals, at least if the transfer is to a different circuit.").

The only remaining question is whether we should apply Sixth Circuit or Eighth Circuit precedent in reviewing Judge Alsop's order. Although district courts must apply the law of the state of the transferor district in diversity actions transferred under 28 U.S.C. § 1404(a) (convenience transfers), *see Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir.1980) (regardless of which party requests the transfer), the prevailing view for federal questions is that "the venue of appeal determines choice of law on federal issues." See Robert A. Ragazzo, *Transfer and Choice of Federal Law: The Appellate Model*, 93 MICH. L.REV. 703, 743 (1995). Federal law is presumed to be uniform, whether or not it is in fact. *Id.* at 736.

It is particularly appropriate for us to apply our own precedent in this case.

First, the case was originally filed within this circuit. Second, all of the facts relevant to the remaining claims revolve around alleged racial harassment at Northwest's Detroit cargo facility. The EEOC did not appeal Judge Alsop's dismissal of its claims that were based on the *Aburime* consent decree. Finally, we are remanding this case to the Eastern District of Michigan for further proceedings, and any further appeal will again come before our court. For these reasons, the Eighth Circuit has no interest in the outcome of this case.

## B. Standard of Review

■ We review de novo a district court's grant of summary judgment. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir.1998). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

## C. Claims on Behalf of Hamilton

■ The parties dispute first whether an arbitration agreement between Hamilton and Northwest interferes with the EEOC's right to file a Title VII suit based on her claims. We recently decided this issue in *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448 (6th Cir.1999).

In *Frank's Nursery*, we held that arbitration agreements between an aggrieved employee and her employer do not revoke the enforcement authority of the EEOC. *Id.* at 456. The EEOC brings suit on behalf of an aggrieved individual not only for the benefit of that individual, but also to represent the public interest. *Id.* at 458.

We held in *Frank's Nursery* that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–307, does not apply to Title VII actions brought by the EEOC on behalf of

an employee who has signed an arbitration agreement. The district court in *Frank's Nursery*, like the District of Minnesota here, ordered the employee, not the EEOC, to arbitrate her claims. *Id.* Such an order cannot bind the EEOC, a nonparty to the arbitration agreement. *Id.* at 460. Moreover, since the EEOC "pursues an interest broader than the one a private Title VII litigant pursues," *id.* at 462, our decision in *Frank's Nursery* in no way undermines the purposes of the FAA.

We also held in *Frank's Nursery* that preclusion principles do not apply to bar the EEOC from bringing suit. We explained that "principles of preclusion cannot bar the EEOC from suing to 'make whole' an individual who has agreed to arbitrate her own claim of discrimination, where that individual has neither initiated nor participated in an arbitration proceeding in the first place." *Id.* at 462. Likewise, "judicial estoppel by the doctrine of election of remedies" would not apply to bar the EEOC from bringing its claim. *Id.* at 464.

Finally, we refused to apply waiver principles to preclude the EEOC from bringing suit. We need not fear that employees will sidestep arbitration agreements by having the EEOC bring suits for damages on their behalf because the decision whether to pursue a charge rests with the EEOC. *See Frank's Nursery*, 177 F.3d at 466. Furthermore, the employee may not bring a private action under Title VII if the EEOC pursues a charge on her behalf. *Id.* "Since [Title VII] does not grant an individual the power to obtain recovery without authorization from the EEOC, such an individual cannot, by making decisions about her own ability to sue for herself, override the power of the EEOC to sue in its own name." *Id.*

We need not reach the disputed issues related to whether Hamilton actually signed an arbitration agreement with Northwest, whether any arbitration agreement that was signed applied to the claims

of Hamilton at issue, or whether the arbitration agreement specifically excluded suits by the EEOC. Our holding in *Frank's Nursery* makes clear that the EEOC's right to sue based on Hamilton's charge is not affected by Hamilton's arbitration agreement, whether or not it would apply to her if she brought suit on her own.

## D. Group–Wide Relief

■ The parties dispute the requirements for group-wide relief in Title VII actions brought by the EEOC. Northwest claims that the EEOC has set forth only individualized acts of discrimination towards separate employees and that these acts have no nexus to one another. Northwest then concludes that such evidence is insufficient to seek class-wide relief. Judge Friedman similarly found that the EEOC had not clarified the class for the type of relief the EEOC is seeking.

The EEOC here argues that both Judge Alsop and Northwest erroneously assumed that they were bringing a class-action claim. Instead, explains the EEOC, it was simply seeking general injunctive relief and damages against Northwest based on the incidents of racism experienced by a number of African Americans at the Detroit facility. Judge Alsop recognized that the EEOC need not satisfy the class action requirements of Rule 23 of the Federal Rules of Civil Procedure. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 323, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Judge Friedman, however, without acknowledging this point, concluded that the EEOC failed to clarify the class. Although Judge Friedman did not explicitly conclude that the requirements of Rule 23 must be met, he clearly placed a higher burden on the EEOC for seeking general injunctive relief than either the Supreme Court or Sixth Circuit permits.

We recently explained in *Frank's Nursery* that when the EEOC seeks equitable relief for a group of employees, it need not demonstrate the existence of a class. *See*

*Frank's Nursery*, 177 F.3d at 467. "[T]he EEOC may obtain such general injunctive relief, under the equitable discretion of the district court, even where the EEOC only identifies one or a mere handful of aggrieved employees." *Id.* at 467–68 (citing *EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1449 (6th Cir.1980)). The EEOC need not demonstrate or allege a pattern or policy of discrimination in order to obtain a permanent injunction. *Id.* at 468.

The EEOC also argues that Judge Friedman erred when he concluded that Hamilton's "complaints are already dealt with in terms of the arbitration by Judge Alsop." J.A. at 49 (Tr. of 4/2/98 Oral Order). We are reversing Judge Alsop's order and holding that the EEOC may pursue its claims with respect to racial discrimination affecting Hamilton. On remand the incidents of racism affecting Hamilton also should be considered in connection with the group-wide claims for injunctive relief.

Northwest's claim that the incidents complained of were individualized and had no nexus with one another is disingenuous. Clearly the presence of nooses and Ku Klux Klan symbols in the workplace, if ignored by Northwest, is the type of discriminatory conduct that might warrant general injunctive relief. Additional allegations raised by the EEOC of discriminatory acts directed only at specific employees do not render general injunctive relief inappropriate, and indeed, may bolster the EEOC's claim that Northwest consistently fails to respond adequately to racial harassment.

Northwest asserted at oral argument that even if injunctive relief were appropriate, the EEOC should not be permitted to seek monetary damages for employees other than Hamilton. This particular issue was not adequately briefed before us and was not specifically addressed below. We leave for the district judge on remand to consider whether the EEOC can estab-

lish a claim for monetary damages for any employees other than Hamilton in light of *Frank's Nursery*.[2]

## III. CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and in virtually all of the opinion Judge Moore has written for the court. I write separately merely to note that after we decided *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448 (6th Cir.1999), the parties entered into a settlement agreement that precluded Frank's Nursery from seeking review of our decision;[1] that the decision obviously remains binding on other panels of the court; and that I myself continue to believe that the *Frank's Nursery* panel erred in holding that an employee's agreement to arbitrate Title VII claims does not preclude the EEOC from suing for monetary relief on behalf of the employee without arbitration having been held. See *Frank's Nursery*, 177 F.3d at 468–471 (Nelson, J., concurring in part and dissenting in part).

---

**2.** Since we are reversing the orders of both Judge Alsop and Judge Friedman and remanding the entire case to the Eastern District of Michigan for consideration in light of *Frank's Nursery*, we do not address the scope of the workplace at issue. The record is too lean to discern the appropriate Northwest facilities in Detroit relevant to this case and whether employees at different locations were exposed to the same or similar incidents of

racial harassment. We leave to the district court on remand these issues for consideration with a full record and consistent with our opinion.

**1.** See B. Kaufman, "Benchmarks," *Cincinnati Enquirer*, July 11, 1999, p. C2.